

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT
for the

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

COREY WILLIAMS )
_Petitioner_ )
)
)
v. )  Case No. 1:20-cv-736-SKO
)  _(Supplied by Clerk of Court)_
)  (HC)
)
Warden COILLI (USP ATWATER) )
_Respondent_
_(name of warden or authorized person having custody of petitioner)_

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1. (a) Your full name: Corey Williams
   (b) Other names you have used: 05-217-025
2. Place of confinement:
   (a) Name of institution: U.S.P Atwater
   (b) Address: P.O. Box 019001, Atwater CA 95301

   (c) Your identification number: 052-12-025
3. Are you currently being held on orders by:
   ☑ Federal authorities   ☐ State authorities   ☐ Other - explain:

4. Are you currently:
   ☐ A pretrial detainee (waiting for trial on criminal charges)
   ☑ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
   If you are currently serving a sentence, provide:
      (a) Name and location of court that sentenced you: U.S. District Court

      (b) Docket number of criminal case: 4:00CR-40065-JPG
      (c) Date of sentencing: 7/10/2001
   ☐ Being held on an immigration charge
   ☐ Other _(explain)_:

   RECEIVED
   MAY 27 2020

### Decision or Action You Are Challenging

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

5. What are you challenging in this petition:
   ☑ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

Page 2 of 9

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

❏ Pretrial detention
❏ Immigration detention
❏ Detainer
❏ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory
   maximum or improperly calculated under the sentencing guidelines)
❏ Disciplinary proceedings
❏ Other *(explain):* _____

_____

6.    Provide more information about the decision or action you are challenging:
      (a) Name and location of the agency or court: U.S. District Court, Southern District of
      Illinois
      (b) Docket number, case number, or opinion number: 4:00CR- 40065 - JPG
      (c) Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed):*
      Mandatory Life Enhancement, pursuant to 21 U.S.C. §851, that caused
      an illegal execution of my Life Sentence

      (d) Date of the decision or action: 7/10/2001   (Date Enhanced Sentence was imposed)

              **Your Earlier Challenges of the Decision or Action**

7.    **First appeal**
      Did you appeal the decision, file a grievance, or seek an administrative remedy?
      ❏ Yes          ☑ No
      (a) If "Yes," provide:
              (1) Name of the authority, agency, or court: _____

              (2) Date of filing: _____
              (3) Docket number, case number, or opinion number: _____
              (4) Result: _____
              (5) Date of result: _____
              (6) Issues raised: _____

      (b) If you answered "No," explain why you did not appeal: The ground upon which my
      claim rests was unavailable during my direct appeal and first 2255 habeas
      motion
8.    **Second appeal**
      After the first appeal, did you file a second appeal to a higher authority, agency, or court?
      ❏ Yes          ❏ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a) If "Yes," provide:

    (1) Name of the authority, agency, or court: _____

_____

    (2) Date of filing: _____
    (3) Docket number, case number, or opinion number: _____
    (4) Result: _____
    (5) Date of result: _____
    (6) Issues raised: _____

_____

_____

_____

_____

_____

(b) If you answered "No," explain why you did not file a second appeal: _____

_____

9.    **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☐ Yes         ☐ No

(a) If "Yes," provide:

    (1) Name of the authority, agency, or court: _____

_____

    (2) Date of filing: _____
    (3) Docket number, case number, or opinion number: _____
    (4) Result: _____
    (5) Date of result: _____
    (6) Issues raised: _____

_____

_____

_____

_____

_____

(b) If you answered "No," explain why you did not file a third appeal: _____

_____

10.    **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☑ Yes         ☐ No

If "Yes," answer the following:

(a)    Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

    ☑ Yes         ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:
(1) Name of court: U.S. District Court
(2) Case number: 03-CV-4184-JPG
(3) Date of filing: 2003
(4) Result: Denied
(5) Date of result: 2005
(6) Issues raised: 1) Ineffective Assistance of Counsel
              2) Racial Discriminatory Jury Selection
              3) Challenged Conviction and Sentence

(b) Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?
☒ Yes        ☐ No
If "Yes," provide:
(1) Name of court: Court of Appeals for the Seventh Circuit
(2) Case number: _____
(3) Date of filing: Dont know
(4) Result: Denied
(5) Date of result: Dont know
(6) Issues raised: Dont Remember

(c) Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence: I've raised a valid and meritorious claim of actual Innocence, and during my direct appeal and first § 2255 Motion, I couldnt have raised the "claim of actual innocence because the case laws relied on were unavailable. In addition, it just recently the Ninth Circuit grants prisoners the right to invoke the savings clause for an actual innocence claim regarding a Sentencing Enhancement

11. **Appeals of immigration proceedings**
Does this case concern immigration proceedings?
☐ Yes        ☒ No
If "Yes," provide:
(a) Date you were taken into immigration custody: _____
(b) Date of the removal or reinstatement order: _____
(c) Did you file an appeal with the Board of Immigration Appeals?
    ☐ Yes        ☐ No

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

> If "Yes," provide:
> (1) Date of filing: _____
> (2) Case number: _____
> (3) Result: _____
> (4) Date of result: _____
> (5) Issues raised: _____
>
> _____
> _____
> _____

(d)   Did you appeal the decision to the United States Court of Appeals?
☐ Yes          ☐ No
If "Yes," provide:
(1) Name of court: _____
(2) Date of filing: _____
(3) Case number: _____
(4) Result: _____
(5) Date of result: _____
(6) Issues raised: _____

_____
_____
_____

12.   **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?
☐ Yes          ☑ No
If "Yes," provide:
(a) Kind of petition, motion, or application: _____
(b) Name of the authority, agency, or court: _____

(c) Date of filing: _____
(d) Docket number, case number, or opinion number: _____
(e) Result: _____
(f) Date of result: _____
(g) Issues raised: _____

_____
_____
_____
_____

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

### Grounds for Your Challenge in This Petition

13.   State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** Williams Prior Felony Drug Convictions are not Categorically Drug Felony Convictions for the Purpose of 21 USC § 851 Enhancement

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
Williams two Illinois convictions that were used to enhance his sentence to a mandatory Life imprisonment term are not categorically qualifying § 851 predicates. See Memorandum of Law In Support, page 14 - 10

(b) Did you present Ground One in all appeals that were available to you?
☐ Yes          ☒ No

**GROUND TWO:** Mathis and Descamps Retroactively Established that under the Categorical Approach, Williams prior convictions are not "Felony Drug Offenses" as defined in 21 USC § 802(44)

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
See Memorandum of Law in Support, at page 11

(b) Did you present Ground Two in all appeals that were available to you?
☐ Yes          ☒ No

**GROUND THREE:** Williams did not have an Unobstructed Procedural Shot at Presenting the Claim

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
See Memorandum in Law in Support, at page 11 - 14

(b) Did you present Ground Three in all appeals that were available to you?
☐ Yes          ☒ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:** Williams is Actually Innocent, of Section 841/851 Mandatory Life Sentence Enhancement

(a) Supporting facts *(Be brief. Do not cite cases or law.):*

See Memorandum of Law in Support, at page 14 - 15

(b) Did you present Ground Four in all appeals that were available to you?

☐ Yes          ☑ No

14.   If there are any grounds that you did not present in all appeals that were available to you, explain why you did not: The grounds for raising the claims herein didn't arise until after I exhausted my direct appeal and first § 2255 motion.

**Request for Relief**

15.  State exactly what you want the court to do: Grant writ of ~~this~~ Habeas Corpus, vacating Life Sentence and to resentence without 851 enhancement to time-served and immediate release.

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

5 - 20 - 20

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.  I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: 5-20-20          _Corey Williams_

_Signature of Petitioner_

_____
_Signature of Attorney or other authorized person, if any_

UNITED STATES PENITENTIARY, ATWATER
P.O BOX 019000
ATWATER, CA  95301  DATE _____ MAY 2 0 2020
The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return the enclosure to the above address.

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

———————————————

COREY WILLIAMS

Petitioner

-vs-

WARDEN CIOLLI

Respondent

———————————————

No. 4:00CR-40065-JPG

———————————————

MEMORANDUM OF LAW IN SUPPORT OF

PETITION PURSUANT TO 28 U.S.C. § 2241

Corey Williams

Reg. 05217-024

U.S. Penitentiary

P.O. Box 019001

Atwater, CA 95301

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREY A. WILLIAMS, | Case No. 4:00CR-40065-JPG |
| Petitioner, | |
| | MEMORANDUM OF POINTS AND |
| vs. | AUTHORITY IN SUPPORT OF |
| | MOTION UNDER 28 USC § 2241 |
| WARDEN CIOLLI, | |
| Respondent. | |

COMES NOW, Corey Williams (hereafter, "Williams") and respectfully moves this Court to enter an Order to vacate his life sentence under the Savings Clause, on the grounds that he's actually innocent of the Section 851 enhancement that imposed a mandatory life sentence upon his liberty.

Williams request that this court construe his pleading liberally because he is not represented by an attorney. See Haines v. Kerner, 404 U.S. 519, 520-21 (1927). If the court finds Williams' petition reasonably can be read to state a valid claim on which he can prevail, the court should do so despite any failure to cite proper legal authority, his poor syntax, and sentence construction, or his unfamiliarity with pleading requirements.

A.   History of Case

Corey A. Williams was changed in an indictment with one

1

count of conspiracy to distribute 50 grams or more of crack
cocaine (Count 1) and several counts of distributing crack
cocaine (Counts 2-7) in violation of 21 U.S.C. §§ 841(a)(1)
and 846. On February 2, 2001, the Government filed an
information pursuant to 21 U.S.C. § 851 to establish Williams'
two prior felony drug convictions, which increased his
statutory mandatory minimum sentence on count 1 to life. The
enhancement was to be based on Williams' felony drug
convictions obtained June 3, 1996 and July 11, 1996 in
violation of Illinois Code, Section 720 ILCS 540-401 and 720
ILCS, 540-402.

On February 22, 2001, a jury found Williams guilty of the
conspiracy offense and the distributions charged in counts 2,
5, 6, and 7, and not guilty of the distributions charged in
counts 3 and 4. On July 10, 2001, the district court sentenced
Williams to a term of life imprisonment on count 1 and
concurrent terms of 360 months on counts 2, 5, and 6, and 120
months on count 7. Williams pursued a direct appeal in the
Seventh Circuit, and the conviction and sentences affirmed.
United States v. Williams, 298 F.3d 688 (7th Cir. 2002).

On October 20, 2003, Williams filed a petition pursuant
to 28 U.S.C § 2255 challenging his convictions and sentences.
On August 11, 2004, the district court denied the petition and
the district court denied the request for a certificate of
appealability. On February 2, 2005, the Seventh Circuit
likewise denied the request for a certificate of
appealability. Case No. 04-3313. Williams pursued a second or
successive § 2255 application in the Seventh Circuit on
January 18, 2005 which was denied. Thereafter, he filed a

2

motion for relief from judgment pursuant to Rule 60(b), Fed. R. Civ. P., see 03-cv-04184-JPG, which was also denied as an unauthorized section 2255 motion.

On March 25, 2013, Williams once again filed a motion for relief from judgment under Rule 60(b) in SDIL case No. 03-cv-04184-JPG. This motion was dismissed for a lack of jurisdiction. Then on August 17, 2017, Williams filed a motion for relief from judgment, pursuant to Rue 60(b)(4), Fed. R. Civ. P., in SDIL Case No. 00CR-40065-JPG. The district court once again dismissed for a lack of jurisdiction. An appeal was pursued, and the Seventh Circuit affirmed the district court's judgment. See Case No. 17-3392 (7th Cir. 2018).

    B.   Standard of Review

A federal prisoner who seeks to challenge the legality of his confinement must generally rely on a § 2255 motion to do so. Stephens v. Herrera, 464 F.3d 895, 897 (9th Cir. 2006). However, the "savings clause" of § 2255, provides an exception to that rule. A federal prisoner may file a § 2241 petition if the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." Lorensten v. Hood, 223 F.3d 950, 953 (9th Cir. 2000); 28 U.S.C. § 2255(e). A remedy qualifies as inadequate or ineffective for purpose of section 2255 "when a petitioner (1) makes a claim of actual innocence, and (2) has not had an unobstructed procedural shot at present ing that claim." Harrison v. Ollison, 519 F.3d 952, 959 (9th Cir. 2008).

Yet more precisely, on February 24, 2020, the Ninth

Circuit held that a person may now be deemed "actually innocent" of an erroneous mandatory career offender sentence, allowing a federal prisoner to invoke § 2255(e)'s savings clause to challenge a sentencing enhancement as being actually innocent for such. See Allen v. Ives, 950 F.3d 1184 (9th Cir. 2020).

### Grounds for Relief

I. Williams Prior Felony Convictions are not Categorically Drug Felony Convictions for the Purpose of 21 U.S.C. § 851 Enhancement

Prior to trial, the Government filed two prior drug felony notices against Williams. The Government used Williams' two prior Illinois convictions under 720 ILCS 540-401, and 720 ILCS 540-402. The United States took the position that these two prior convictions qualified as "felony drug offenses" under 21 U.S.C. 841(b)(1)(A). The term "felony drug offense" is defined in 21 U.S.C. § 802(44) as follows:

> "[A]n offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." (emphasis added).

4

However, taken as a whole, 720 ILCS 540-401 and 720 ILCS, 540-402 includes both qualifying and non-qualifying crimes. Because 720 ILCS 540-401 and 720 ILCS 540-402 as a whole "comprises multiple, alternative versions of the crimes," the statutes are divisible and subject to the modified categorical approach. See Descamps, 133 S. Ct. at 2284. Clearly, 720 ILCS 540-401 and 720 ILCS, 540-402, encompasses both conduct that qualifies as prior drug felony conviction and conduct that does not. Accordingly, this court must identify from among several alternative, Williams' guilty plea and sentencing transcripts (e.g., "the crimes of conviction"), so the court can determine if Williams' crimes are categorically "felony drug offenses" under § 802(44) to support the § 851 enhancement. Id at 2285. Williams contends that they are not and he is actual innocent for the prior drug convictions enhancements.

The Ninth Circuit applies a three-step analysis to determine whether a prior conviction under state law qualifies as a predicate drug trafficking offense under the federal sentencing guidelines. Though Williams was sentenced under §§ 841/851 mandatory sentencing provision, the same categorical analysis applies. The first inquiry is whether the state law is a categorical match with a federal drug trafficking offense. See Taylor v. United States, 495 U.S. 575, 599-600, 109 L. Ed. 2d 607 (1990). In this instance, the state offenses at hand are 720 ILCS 540-401 and 720 ILCS, 540-402. At this step, the courts look only to the "statutory definitions" of the corresponding offense. Id. at 600. If a state law

5

"proscribes the same amount of or less conduct than" that qualifying as a federal drug trafficking offense, then the two offenses are a categorical match. United States v. Hernandez, 769 F.3d 1059, 1062 (9th Cir. 2014)(per curaim); see also Taylor, 495 U.S. at 599.

It is clear that 720 ILCS 540-401 and 720 ILCS, 540-402, like many California State drug statutes, are not deemed a categorical match with a federal drug trafficking offense because they are overly broad. Both 720 ILCS 540-401 and 720 ILCS 540-402 sweeps much broadly than § 802(44) that defines the term "prior drug offenses." See Attachment A (Statutory Language of 720 ILCS 540-401 and 720 ILCS, 540-402). For instance, 720 ILCS 540-401(c) (one of the predicates used for the § 851 enhancement) consists of 11 subsections ((c)(1) to (c)(11)). But more importantly, Section 540-401(c) criminalizes controlled substances as well as counterfeits (analogous substances) to the drug types listed in each subsection of the statute. Thus, a person can violate 720 ILCS Section 540-401(c) by mere possession or distribution of other substances not listed in 21 U.S.C. § 802(44), nor regulated by under Schedule I to V of federal laws. See 21 U.S.C. § 812. Moreover, the Supreme Court held, in performing the categorical analysis, "courts must presume that the conviction rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed by" [§ 802(44) elements]. (emphasis added). See Moncrieffe v. Holder, 569 U.S. 184, 190-91 (2013).

Thereby, because Williams' plea transcripts do not

demonstrate that he entered a fact specific stipulation to any substance listed in § 802(44), his two prior Illinois convictions are not categorically "prior drug offenses" for the purpose of §§ 841/851 enhancements. See Mielewczyk, 575 F.3d at 995 (controlled substance requirement); Rivera-Sanchez, 247 F.3d at 909 (actus reus requirement). Williams' case, therefore, turns on the second step of the categorical analysis.

At the second step, the court would ask whether 720 ILCS 540-401 and 720 ILCS 540-402 are divisible statutes which "sets out one or more elements of the offenses in the alternative." Descamps v. United States, 133 S. Ct. 2276, 2281, 186 L. Ed. 2d 438 (2013). In Mathis, the Supreme Court reiterated the importance of the abstract comparison of elements, explaining that a statute is divisible only when it "list[s] elements in the alternative, and thereby define[s] multiple crimes." 136 S. Ct. at 2249. Mathis did not change the rule stated in Descamps; it only reiterated that the Supreme Court meant what it said when it instructed courts to compare elements. However, Mathis also instructed courts not to assume that a statute lists alternative elements and defines multiple crimes simply because it contains a disjunctive list. Id. Instead, Mathis instruct courts to consult "authoritative sources of state law" to determine whether a statute contains alternative elements defining multiple crimes or alternative means by which a defendant might commit the same crime. Mathis, 136 S. Ct. at 2256.

7

Put differently, to determine whether Williams' convictions under 720 ILCS 540-401 and 720 ILCS 540-402 would qualify as a federal felony drug offenses, the court must look to the statutory elements under which he was previously convicted, rather than the underlying conduct or facts giving rise to that conviction. United States v. Hollis, 490 F.3d 1149, 1157 (9th Cir. 2007), abrogated on other grounds by DePierre v. United States, 564 U.S. 70 (2011); accord United States v. Hernandez, 312 Fed. Appx 937, 939 (9th Cir. 2009)(unpublished)(applying the categorical approach to the "felony drug offense" definition).

This analysis requires a categorical comparison between the predicate offense of conviction and the federal definition. So first, the court would ask whether 720 ILCS 540-401 and 720 ILCS 540-402 (e.g. "statutes of conviction") are categorical matches to the generic predicate offense; that is, if the statutes of conviction criminalizes only as much (or less) conduct than the generic offense. Medina-Lara v. Holder, 771 F.3d 1106, 1112 (9th Cir. 2014). If there's no dispute on this matter between Williams and the Government, then the court must ask if the statutes of convictions comparatively overboard elements are divisible.

If 720 ILCS 540-401 and 720 ILCS 540-402 are divisible under Mathis, then the court may proceed to the third step in the analysis and apply the modified categorical approach. At this step, the court examines judicially noticeable documents of conviction "to determine which statutory phrase was the basis for the conviction." Descamps, 133 S. Ct. 2285. As in this case, if Williams' guilty plea does not provide a fact

specific stipulation to the elements constituting a federal drug trafficking offense, the prior state convictions may not serve as predicates for the section 851 enhancement. See Shepard v. United States, 544 U.S. 13, 16, 161 L. Ed. 2d 205 (2005). Williams contends that upon taking judicial review of his State plea transcripts, stipulation, and sentencing transcript, the court will observe that his prior convictions used to enhance his federal sentence are not qualifying predicates under Descamps v. United States, 570 U.S. 254 (2013), and Mathis v. United States, 136 S. Ct. 2243 (2016) to support the § 851 mandatory life enhancement.

Looking to the limited class of documents from the record of the prior convictions, Mathis, 136 S. Ct. at 2249, there is simply no indication of which controlled-substance element Williams pleaded guilty to as part of his 720 ILCS 540-401 and 720 ILCS, 540-402 convictions. The Government shoulders the burden here to prove a prior conviction qualifies as a felony drug offense under Descamps, Mathis, and the categorical analysis. See e.g. United States v. Ocampo-Estrada, 873 F.3d 661 (9th Cir. 2017).

In that case, the Government lacked proof that Ocampo's prior drug felony was a qualifying predicate for the § 851 enhancement. So the Government hangs its case on Ocampo's statement made when objecting the presentence report in the instant federal case. Ocampo stated his prior offense "involve[d] 57 grams of methamphetamine." However, after the district court denied relief, and on direct review, the Ninth Circuit held that there were two problems with relying upon this statement as a basis to enhance Ocampo's sentence. First,

Ocampo's statement made in the instant case appears in a document that is outside of the "limited class of documents" from the record of a prior conviction upon which a sentencing court may rely to determine which version of an offense was the basis for a prior conviction. Mathis, 136 S. Ct. at 2249.

Second, this statement does not constitute an admission that methamphetamine was the element of section 11378 to which Ocampo pleaded guilty-at best it indicates that the conduct giving rise to his prior conviction "involve[d]" methamphetamine. Further, the Ninth Circuit noted in Ocampo that the Supreme Court has expressly forbidden reliance upon the underlying facts of a prior conviction to determine whether the prior offense categorically matches the federal statute at issue. Descamps, 133 S. Ct. at 2287 (a sentencing court cannot "discover what the defendant actually did" and then use those discovered facts to establish a categorical match); see also Sahagun-Gallegos, 782 F.3d at 1100-01 (same).

In Williams' case, the indictment stated an allegation of conduct. But it did not resolve what elements Williams stipulated to. The § 851 notices relies merely on what charges were brought against Williams, without a categorical approach in light of Descamps, and Mathis. Thus, Williams contends that he's actually innocent for the § 851 mandatory life imprisonment enhancement, in consistent with Allen v. Ives' ruling. See e.g., United States v. Graves, 925 F.3d 1036 (9th Cir. Apr. 10, 2019)(Attached hereto).

II. Mathis and Descamps Retroactively Established

10

that Under the Categorical Approach,

Williams' Prior Convictions are not Felony Drug

Offenses as Defined in 21 USC 802(44)

Williams (as Allen) contends that Mathis v. United
States, 136 S. Ct. 2243 (2016), and Descamps v. United States,
570 U.S. 254 (2013), retroactively established that under the
categorical approach of Taylor v. United States, 495 U.S. 575
(1990), his Illinois state drug convictions under 720 ILCS
540-401 and 720 ILCS 540-402, are not drug felony offenses as
defined in 21 U.S.C. § 802(44), and therefore he is actually
innocent of being a section 851 offender. Williams is
requesting resentencing without the § 851 enhancement.

III. Williams did not have an Unobstructed
Procedural Shot at Presenting the Claim

When deciding whether a petitioner has had an
"unobstructed procedural shot," the courts consider: (1)
whether the legal basis for petitioner's claim did not arise
until after he had exhausted his direct appeal and first §
2255 motion; and (2) whether the law changed in any way
relevant to petitioner's claim after that first § 2255
motion." Harrison v. Ollison, 519 F.3d 952, 960 (9th Cir.
2008). If an intervening court decision after a prisoner's
direct appeal and first § 2255 "effects a material change in
the applicable law [,]" then the prisoner did not have an
unobstructed procedural shot to present his claim. Alaimalo,
645 F.3d 1042, 1047 (9th Cir. 2011).

11

Williams did not have an unobstructed procedural shot at presenting his claim of actual innocence because it was foreclosed by existing precedents at the time of his direct appeal and his first section 2255 motion. Under the law at that time of his § 2255 motion, Descamps and Mathis was unavailable to be applied in the categorical analysis to prior State statutes. Moreover, pre-Descamps and Mathis, courts were still looking at defendants conduct rather than the elements of the state statute, and assessing whether the least way of violating the statute matched the generic offense.

Based on the Supreme Court's later decisions in Descamps and Mathis, and recently, Ninth Circuit's decision in Allen v. Ives, Williams is now able to argue that (1) the categorical approach should apply to Illinois Code, Section 720 ILCS 540-401 and 720 ILCS 540-402, (2) these prior convictions are not "felony drug offenses" under 21 U.S.C. § 802(44), and (3) he's actually innocent of the § 851 enhancement that rested on two priors that are not qualified predicates. The legal basis for this argument arose only after Williams had appealed and after he had filed his § 2255 motion.

The Ninth Circuit have held that the decisions in Descamps and Mathis do not meet the standard for a second or successive § 2255 motion because they interpreted federal statutes, not the Constitution. See Arazola-Galea v. United States, 876 F.3d 1257, 1259 (9th Cir. 2017; Ezell v. United States, 778 F.3d 762, 766 (9th Cir. 2015). Because Williams' claim under Descamps and Mathis "did not become available until after the Seventh Circuit denied his § 2255, and because that claim does not satisfy the criteria of § 2244 for a

second or successive § 2255 motion, Williams has not had (and,
indeed, will never get), an opportunity to present his claim
in a § 2255 motion that his prior Illinois convictions are not
qualifying predicates under the standard in Descamps and
Mathis. Stephens, 464 F.3d at 898. Thus, Williams has not had
an unobstructed procedural shot at presenting his actual
innocence claim.

### A. Retroactivity of Descamps and Mathis

The Ninth Circuit held, "[O]ur holding that Allen has
made a cognizable claim of actual innocence, and that he did
not have an unobstructed procedural shot at presenting that
claim resolves the question of statutory jurisdiction in this
case." Allen v. Ives, Id. "We take the opportunity to clarify
that Mathis and Descamps apply retroactively when a court
reviews a criminal judgment in the course of addressing a §
2241 petition or a first § 2255 motion."

The Allen Court reiterated a well established concept of
law that, "A new rule applies retroactively in a collateral
proceeding only if (1) the rule is substantive or (2) the rule
is a watershed rule of criminal procedure implicating the
fundamental fairness and accuracy of the criminal proceeding."
Whorton v. Bocking, 549 U.S. 406, 416 (2007). "A rule is
substantive rather than procedural if it alters the range of
conduct or the class of persons that the law punishes." Welch
v. United States, 136 S. Ct. 1257, 1264-65 (2016)(quoting
Schriro v. Summerlin, 542 U.S. 348, 353 (2004)).

In sum, the Ninth Circuit held that Mathis and Descamps

13

alters "the range of conduct ... that the law punishes" and
not "only the procedures used to obtain the conviction."
Welch, 136 S. Ct. at 1266. Further, the Court held in Allen v.
Ives, "[W]e have previously recognized that decisions that
alter the substantive reach of a federal statute apply
retroactively in § 2241 proceedings under the escape hatch."
Alaimalo, 645 F.3d 1042. The Supreme Court's decisions in
Mathis and Descamps therefore will apply retroactively to a
review of Allen's sentence on remand. Accordingly, Williams
contends that such decisions in Mathis and Descamps alters the
range of conduct that §§ 841 and 851 punishes as prior drug
offenses, thus creating a material effect that warrants relief
under the savings clause.

IV. Williams is Actually Innocent of Section 841
& 851 Mandatory Life Sentence Enhancement

In Allen v. Ives, the Ninth Circuit posed the question in
this way: "Whether a petitioner who committed a crime that is
not a predicate crime may challenge his career offender status
under § 2241?" The Court clearly indicated that, because
Allen's prior conviction did not qualify that he could be
deemed actually innocent of it being a predicate offense for
federal sentencing purposes. The Court held that Allen being
sentenced under the mandatory career offender guideline was no
different from being sentenced under a statute, citing Alleyne
v. United States, 570 U.S. 99 (2013), in which the Supreme
Court held that a fact that increases the mandatory minimum
sentence as an "element" of the offense that must be found by

a jury.

Precisely, that is exactly what the § 851 mandatory penalty did in Williams' case--requiring a mandatory minimum sentence of life imprisonment the court had to impose, without anything more than the judge accepting the § 851 notices filed by the Government. As the Ninth Circuit suggested in Allen, this was a violation of Alleyne. To capture the idea that the incarceration of one whose conduct is not criminal "inherently results in a complete miscarriage of justice," Davis v. United States, 417 U.S. 333, 346 (1974), most circuits have include an actual innocence component in their savings clause tests.

Accordingly, Williams has made a cognizable claim to invoke the savings clause, and contends that he is actually innocent for the 851 mandatory life sentence enhancement. He has been incarcerated for over 20 years, and in absence of one or both of the § 851 predicate, his sentencing exposure would be significantly less than mandatory life imprisonment. Under the savings clause and Allen v. Ives, this court has jurisdiction to issue the writ, and grant Williams time served and immediate release. Williams submits that this court also has jurisdiction to take into consideration the First Step Act's provision that amended Section 841 statutory enhancement. See e.g., United States v. Graves, 925 F.3d 1036 (9th Cir. 2019)(When the district court re-sentences Graves, it may also consider what effect, if any, the recently enacted First Step Act has on his sentence). See Pub. L. No. 115-391, § 401(a), 132 Stat. 5194 (Dec. 21, 2018).

Conclusion

15

WHEREFORE, Petitioner Corey A. Williams respectfully moves this court to enter an Order for immediate release under the savings clause, on the basis that he's actually innocent for the § 851 enhancement that relied on his prior Illinois State convictions that are not categorically "felony drug offenses" under Mathis, Descamps, and 21 U.S.C. § 802(44).

DATED this 20th day of May, 2020.

Respectfully submitted,

Corey A. Williams

# Attachment A

# Illinois Compiled Statutes

ILCS Listing   Public Acts   Search   Guide   Disclaimer

Information maintained by the Legislative Reference Bureau
Updating the database of the Illinois Compiled Statutes (ILCS) is an ongoing process. Recent laws may not yet be included in the ILCS database, but they are found on this site as Public Acts soon after they become law. For information concerning the relationship between statutes and Public Acts, refer to the Guide.

Because the statute database is maintained primarily for legislative drafting purposes, statutory changes are sometimes included in the statute database before they take effect. If the source note at the end of a Section of the statutes includes a Public Act that has not yet taken effect, the version of the law that is currently in effect may have already been removed from the database and you should refer to that Public Act to see the changes made to the current law.

(720 ILCS 570/401) (from Ch. 56 1/2, par. 1401)
    Sec. 401. Manufacture or delivery, or possession with
intent to manufacture or deliver, a controlled substance, a
counterfeit substance, or controlled substance analog. Except
as authorized by this Act, it is unlawful for any person
knowingly to manufacture or deliver, or possess with intent to
manufacture or deliver, a controlled substance, counterfeit
substance, or controlled substance analog. A violation of this
Act with respect to each of the controlled substances listed
herein constitutes a single and separate violation of this Act.
For purposes of this Section, "controlled substance analog" or "analog" means a
substance, other than a controlled substance, which is not
approved by the United States Food and Drug Administration or,
if approved, is not dispensed or possessed in accordance with
State or federal law, and that has a chemical structure
substantially similar to that of a controlled substance in
Schedule I or II, or that was specifically designed to produce
an effect substantially similar to that of a controlled
substance in Schedule I or II. Examples of chemical classes in
which controlled substance analogs are found include, but are
not limited to, the following: phenethylamines, N-substituted
piperidines, morphinans, ecgonines, quinazolinones, substituted
indoles, and arylcycloalkylamines. For purposes of this Act, a
controlled substance analog shall be treated in the same manner
as the controlled substance to which it is substantially
similar.
    (a) Any person who violates this Section with respect to
the following amounts of controlled or counterfeit substances
or controlled substance analogs, notwithstanding any of the
provisions of subsections (c), (d), (e), (f), (g) or (h) to the
contrary, is guilty of a Class X felony and shall be sentenced
to a term of imprisonment as provided in this subsection (a)
and fined as provided in subsection (b).
        (1) (A) not less than 6 years and not more than 30
    years with respect to 15 grams or more but less than 100
    grams of a substance containing heroin;
        (B) not less than 9 years and not more than 40 years
    with respect to 100 grams or more but less than 400
    grams of a substance containing heroin;
        (C) not less than 12 years and not more than 50 years
    with respect to 400 grams or more but less than 900 grams
    of a substance containing heroin; or
        (D) not less than 15 years and not more than 60 years
    with respect to 900 grams or more of any substance
    containing heroin, or an analog thereof;
        (2) (A) not less than 6 years and not more than 30
    years with respect to 15 grams or more but less than 100

        (1.5)(A) not less than 6 years and not more than 30
    years with respect to 100 grams or more but less than 400
    grams of a substance containing fentanyl, or an analog
    thereof;
        (B) not less than 9 years and not more than 40 years
    with respect to 100 grams or more but less than 400 grams
    of a substance containing fentanyl, or an analog thereof;
        (C) not less than 12 years and not more than 50 years
    with respect to 400 grams or more but less than 900 grams
    of a substance containing fentanyl, or an analog thereof;
    or
        (D) not less than 15 years and not more than 60 years
    with respect to 900 grams or more of a substance containing
    fentanyl, or an analog thereof;
        (2) (A) not less than 6 years and not more than 30
    years with respect to 15 grams or more but less than 100
    grams of a substance containing cocaine, or an analog
    thereof;
        (B) not less than 9 years and not more than 40 years
    with respect to 100 grams or more but less than 400 grams
    of a substance containing cocaine, or an analog thereof;
        (C) not less than 12 years and not more than 50 years
    with respect to 400 grams or more but less than 900 grams
    of a substance containing cocaine, or an analog thereof; or
        (D) not less than 15 years and not more than 60 years
    with respect to 900 grams or more of any substance
    containing cocaine, or an analog thereof;
        (3) (A) not less than 6 years and not more than 30
    years with respect to 15 grams or more but less than 100
    grams of a substance containing morphine, or an analog
    thereof;
        (B) not less than 9 years and not more than 40 years
    with respect to 100 grams or more but less than 400 grams
    of a substance containing morphine, or an analog thereof;
        (C) not less than 12 years and not more than 50 years
    with respect to 400 grams or more but less than 900 grams
    of a substance containing morphine, or an analog
    thereof; or
        (D) not less than 15 years and not more than 60 years
    with respect to 900 grams or more of a substance containing
    morphine, or an analog thereof;
        (4) (A) not less than 6 years and not more than 30
    years with respect to 200 grams or more but less than 600
    grams of any substance containing peyote, or an analog
    thereof;
        (5) 200 grams or more of any substance containing
    peyote, or an analog thereof;
        (6) 200 grams or more of any substance containing a
    derivative of barbituric acid, or any of the salts of a
    derivative of barbituric acid, or an analog thereof;
        (B) not less than 15 years and not more than 60 years
    with respect to 900 grams or more of a substance containing
    amphetamine, or a salt of an optical isomer of
    amphetamine, or an analog thereof;
        (6.5) (blank);
        (6.6) (blank);
        (7) (A) not less than 6 years and not more than 30
    years with respect to: (i) 15 grams or more but less than
    100 grams of a substance containing lysergic acid
    diethylamide (LSD), or an analog thereof; or (ii) 15 or
    more objects or 15 or more segregated parts of an object or
    objects containing in them or having upon them any amount
    of a substance containing lysergic acid diethylamide
    (LSD), or an analog thereof;
        (B) not less than 9 years and not more than 40 years
    with respect to: (i) 100 grams or more but less than 400
    grams of a substance containing lysergic acid diethylamide
    (LSD), or an analog thereof; or (ii) 200 or more objects or
    200 or more segregated parts of an object or objects but
    less than 600 objects or less than 600 segregated parts of
    an object or objects containing in them or having upon them

any amount of any substance containing lysergic acid diethylamide (LSD); or an analog thereof;

(6) 100 grams or more but less than 400 grams of a substance with respect to: (i) 400 grams or more but less than 900 grams of a substance containing lysergic acid diethylamide (LSD), or an analog thereof, or (ii) 600 or more objects or 600 or more segregated parts of an object but less than 1500 objects or less than 1500 segregated parts of an object containing in them or having upon them any amount of any substance containing lysergic acid diethylamide (LSD); or an analog thereof;

(7.5)(A) not less than 6 years and not more than 30 years with respect to: (i) 15 grams or more but less than 100 grams of a substance listed in paragraph (1), (2), (2.1), (3), (14.1), (19), (20), (20.1), (21), (25), or (26) of subsection (d) of Section 204, or an analog or derivative thereof, or (ii) 15 or more pills, tablets, caplets, capsules, or objects containing them or having upon them any amount of a substance listed in paragraph (1), (2), (2.1), (3), (14.1), (19), (20), (20.1), (21), (25), or (26) of subsection (d) of Section 204, or an analog or derivative thereof;

(7.5)(B) not less than 9 years and not more than 40 years with respect to: (i) 100 grams or more but less than 400 grams of a substance listed in paragraph (1), (2), (2.1), (3), (14.1), (19), (20), (20.1), (21), (25), or (26) of subsection (d) of Section 204, or an analog or derivative thereof, or (ii) 200 pills, tablets, caplets, capsules, or objects containing them or having upon them any amount of a substance listed in paragraph (1), (2), (2.1), (3), (14.1), (19), (20), (20.1), (21), (25), or (26) of subsection (d) of Section 204, or an analog or derivative thereof;

(C) not less than 50 years with respect to: (i) 400 grams or more but less than 900 grams of a substance listed in paragraph (1), (2), (2.1), (3), (14.1), (19), (20), (20.1), (21), (25), or (26) of subsection (d) of Section 204, or an analog or derivative thereof, or (ii) 600 or more pills, tablets, caplets, capsules, or objects but less than 1,500 pills, tablets, caplets, capsules, or objects containing in them or having upon them any amount of a substance listed in paragraph (1), (2), (2.1), (3), (14.1), (19), (20), (20.1), (21), (25), or (26) of subsection (d) of Section 204, or an analog or derivative thereof;

(8) 30 grams or more of any substance containing

pentazocine or any of the salts, isomers and salts of isomers of pentazocine, or an analog thereof;

(9) 30 grams or more of any substance containing methaqualone or any of the salts, isomers and salts of methaqualone, or an analog thereof;

(10) 30 grams or more of any substance containing phencyclidine or any of the salts, isomers and salts of phencyclidine, or an analog thereof;

(10.5) 30 grams or more of any substance containing ketamine or any of the salts, isomers and salts of ketamine, or an analog thereof;

(10.6) 100 grams or more of any substance containing hydrocodone, or any of the salts, isomers and salts of hydrocodone, or any of the salts, isomers and salts of isomers of hydrocodone, or an analog thereof;

(10.7) (blank).

(10.8) 100 grams or more of any substance containing dihydrocodeine, or any of the salts, isomers and salts of dihydrocodeine, or any of the salts, isomers and salts of isomers of dihydrocodeine, or an analog thereof;

(10.9) 100 grams or more of any substance containing oxycodone, or an analog thereof;

(11) any amount of any other controlled substance classified in Schedules I or II, or an analog thereof, which is not otherwise included in this subsection.

(b) Any person sentenced with respect to violations of paragraph (1), (2), (3), (4), (5), (6), (7), or (7.5) of subsection (a) involving 100 grams or more of the controlled substance named therein, may in addition to the penalties provided therein, be fined an amount not more than $500,000 or the full street value of the controlled substance, whichever is greater. The term "street value" shall have the meaning provided in Section 110-5 of the Code of Criminal Procedure of 1963. Any person sentenced with respect to any other provision of subsection (a), may in addition to the penalties provided therein, be fined an amount not to exceed $500,000.

(b-1) Excluding violations of this Act when the controlled substance is fentanyl, any person sentenced to a term of imprisonment with respect to violations of Section 401.1, 405, or 405.1, or a violation of Section 401 of this Act when the controlled substance contains any amount of fentanyl), 3 years shall be added to the maximum sentence for the offense shall be increased by 3 years.

(c) Any person who violates this Section with regard to the following amounts of controlled or counterfeit substances or controlled substance analogs, notwithstanding any of the provisions of subsections (a), (b), (d), (e), (f), (g) or (h) to the contrary, is guilty of a Class X felony. The fine for violation of this subsection (c) shall not be more than $250,000:

(1) 1 gram or more but less than 15 grams of any substance containing heroin, or an analog thereof;

(1.5) 1 gram or more but less than 15 grams of any substance containing fentanyl, or an analog thereof;

(2) 1 gram or more but less than 15 grams of any substance containing cocaine, or an analog thereof;

(3) 10 grams or more but less than 15 grams of any substance containing morphine, or an analog thereof;

(4) 50 grams or more but less than 200 grams of any substance containing peyote, or an analog thereof;

(5) 50 grams or more but less than 200 grams of any substance containing a derivative of barbituric acid, or an analog thereof;

(6) 50 grams or more but less than 200 grams of any substance containing amphetamine or any salt of an optical isomer of amphetamine, or an analog thereof;

(6.5) (blank).

(7)(i) 5 grams or more but less than 15 grams of any substance containing lysergic acid diethylamide (LSD), or an analog thereof, or (ii) more than 10 objects or more than 10 segregated parts of an object or less than 15 objects or less than 15 segregated parts of an object containing in them or having upon them any amount of any substance containing lysergic acid diethylamide (LSD), or an analog thereof;

(7.5)(i) 5 grams or more but less than 15 grams of any substance listed in paragraph (1), (2), (2.1), (2.2), (3), (14.1), (19), (20), (20.1), (21), or (26) of subsection (d) of Section 204, or an analog or derivative thereof, or (ii) more than 10 pills, tablets, caplets, capsules, or objects but less than 15 pills, tablets, caplets, capsules, or objects containing in them or having upon them any amount of any substance listed in paragraph (1), (2), (2.1), (2.2), (3), (14.1), (19), (20), (20.1), (21), or (26) of Section 204, or an analog or derivative thereof;

(8) 10 grams or more but less than 30 grams of any substance containing pentazocine or any of the salts, isomers and salts of isomers of pentazocine, or an analog thereof;

(9) 10 grams or more but less than 30 grams of any substance containing methaqualone or any of the salts, isomers and salts of isomers of methaqualone, or an analog thereof;

(10) 10 grams or more but less than 30 grams of any substance containing phencyclidine or any of the salts, isomers and salts of isomers of phencyclidine (PCP), or an analog thereof;

(10.5) 10 grams or more but less than 30 grams of any substance containing ketamine, or any of the salts, isomers and salts of isomers of ketamine, or an analog thereof;

(10.6) 50 grams or more but less than 100 grams of any substance containing hydrocodone, or any of the salts, isomers and salts of isomers of hydrocodone, or an analog thereof;

(10.7) (blank).

(10.8) 50 grams or more but less than 100 grams of any substance containing dihydrocodeine, or any of the salts, isomers and salts of isomers of dihydrocodeine, or an analog thereof;

(10.9) 50 grams or more but less than 100 grams of any substance containing oxycodone, or any of the salts, isomers and salts of isomers of oxycodone, or an analog thereof;

(11) 50 grams or more but less than 200 grams of any substance containing a substance classified in Schedules I or II, or an analog thereof, which is not otherwise included in this subsection.

(c) (blank).

(d) Any person who violates this Section with regard to any other amount of a controlled or counterfeit substance containing dihydrocodeine or classified in Schedules I or II, or an analog thereof, which is (i) a narcotic drug, (ii) lysergic acid diethylamide (LSD) or an analog thereof, (iii) any substance containing amphetamine or fentanyl or any salt or optical isomer of amphetamine or fentanyl, or any salt of an optical isomer of amphetamine or fentanyl, (iv) any substance containing N-Benzylpiperazine or any salt or optical isomer of N-benzylpiperazine, thereof, or (iv) any substance containing N-Benzylpiperazine thereof, or an analog thereof, is guilty of a Class 2 felony. The

---

fine for violation of this subsection (d) shall not be more than $200,000;

(d-5) (blank).

(e) Any person who violates this Section with regard to any other amount of a controlled substance other than methamphetamine or counterfeit substance classified in Schedule I or II, or an analog thereof, which substance is not included under subsection (d) of this Section, is guilty of a Class 3 felony. The fine for violation of this subsection (e) shall not be more than $150,000;

(f) Any person who violates this Section with regard to any other amount of a controlled or counterfeit substance classified in Schedule III is guilty of a Class 3 felony. The fine for violation of this subsection (f) shall not be more than $125,000;

(g) Any person who violates this Section with regard to any other amount of a controlled or counterfeit substance classified in Schedule IV is guilty of a Class 3 felony. The fine for violation of this subsection (g) shall not be more than $100,000;

(h) Any person who violates this Section with regard to any other amount of a controlled or counterfeit substance classified in Schedule V is guilty of a Class 3 felony. The fine for violation of this subsection (h) shall not be more than $75,000.

(i) This Section does not apply to the manufacture, possession or distribution of a substance in conformance with the provisions of an approved new drug application or an exemption for investigational use within the meaning of Section 505 of the Federal Food, Drug and Cosmetic Act.

(Source: P.A. 99-371, eff. 1-1-16; 99-585, eff. 1-1-17; 100-368, eff. 1-1-18.)

## Illinois Compiled Statutes

ILCS Listing   Public Acts   Search   Guide   Disclaimer

Information maintained by the Legislative Reference Bureau
Updating the database of the Illinois Compiled Statutes (ILCS) is an ongoing process. Recent laws may not yet be included in the ILCS database, but they are found on this site as Public Acts soon after they become law. For information concerning the relationship between statutes and Public Acts, refer to the Guide.

Because the statute database is maintained primarily for legislative drafting purposes, statutory changes are sometimes included in the statute database before they take effect. If the source note at the end of a Section of the statutes includes a Public Act that has not yet taken effect, the version of the law that is currently in effect may have already been removed from the database and you should refer to that Public Act to see the changes made to the current law.

(720 ILCS 570/402) (from Ch. 56 1/2, par. 1402)
Sec. 402. Except as otherwise authorized by this Act, it is unlawful for any person to possess a controlled or counterfeit substance or controlled substance analog. A violation of this Act with respect to each of the controlled substances listed herein constitutes a single and separate violation of this Act. For purposes of this subsection (a), "controlled substance analog" or "analog" means a substance, other than a controlled substance, which is not approved by the United States Food and Drug Administration or, if approved, is not dispensed or possessed in accordance with State or federal law, and that has a chemical structure substantially similar to that of a controlled substance in Schedule I or II or that was specifically designed to produce an effect substantially similar to that of a controlled substance in Schedule I or II. Examples of chemical classes in which controlled substance analog are found include, but are not limited to, the

following: phenethylamines, N-substituted piperidines, morphinans, ecgonines, quinazolinones, substituted indoles, and acyclovir derivatives thereof... a controlled substance analog shall be treated in the same manner as the controlled substance to which it is substantially similar.

(a) Any person who violates this Section with respect to the following controlled or counterfeit substances and amounts, notwithstanding any of the provisions of subsections (c) and (d) to the contrary, is guilty of a Class 1 felony and shall, if sentenced to a term of imprisonment, be sentenced as provided in this subsection (a) and fined as provided in subsection (a):

(1) (A) not less than 4 years and not more than 15 years with respect to 15 grams or more but less than 100 grams of a substance containing heroin;

(B) not less than 6 years and not more than 30 years with respect to 100 grams or more but less than 400 grams of any substance containing heroin;

(C) not less than 8 years and not more than 40 years with respect to 400 grams or more but less than 900 grams of any substance containing heroin;

(D) not less than 10 years and not more than 50 years with respect to 900 grams or more of any substance containing heroin;

(2) (A) not less than 4 years and not more than 15 years with respect to 15 grams or more but less than 100 grams of any substance containing cocaine;

(B) not less than 6 years and not more than 30 years with respect to 100 grams or more but less than 400 grams of any substance containing cocaine;

(C) not less than 8 years and not more than 40 years with respect to 400 grams or more but less than 900 grams of any substance containing cocaine;

(D) not less than 10 years and not more than 50 years with respect to 900 grams or more of any substance containing cocaine;

(3) (A) not less than 4 years and not more than 15 years with respect to 15 grams or more but less than 100 grams of any substance containing morphine;

(B) not less than 6 years and not more than 30 years with respect to 100 grams or more but less than 400 grams of any substance containing morphine;

(C) not less than 8 years and not more than 40 years with respect to 400 grams or more but less than 900 grams of any substance containing morphine;

(D) not less than 10 years and not more than 50 years with respect to 900 grams or more of any substance containing morphine;

(4) 200 grams or more of any substance containing peyote;

(5) 200 grams or more of any substance containing a derivative of barbituric acid or any of the salts of a derivative of barbituric acid;

(6) 200 grams or more of any substance containing amphetamine or any salt of an optical isomer of amphetamine;

(6.5) (blank);

(7) (A) not less than 4 years and not more than 15 years with respect to: (i) 15 grams or more but less than 100 grams of any substance containing lysergic acid diethylamide (LSD), or an analog thereof, or (ii) 15 or more objects or 15 or more segregated parts of an object or objects but less than 200 objects or 200 objects containing in them or having upon them any amount of any substance containing lysergic acid diethylamide (LSD), or an analog thereof;

containing lysergic acid diethylamide (LSD), or an analog thereof;

(B) not less than 6 years and not more than 30 years with respect to: (i) 100 grams or more but less than 400 grams of any substance containing lysergic acid diethylamide (LSD), or an analog thereof, or (ii) 200 or more objects or 200 or more segregated parts of an object or objects but less than 600 objects or 600 objects containing in them or having upon them any amount of any substance containing lysergic acid diethylamide (LSD), or an analog thereof;

(C) not less than 8 years and not more than 40 years with respect to: (i) 400 grams or more but less than 900 grams of any substance containing lysergic acid diethylamide (LSD), or an analog thereof, or (ii) 600 or more objects or 600 or more segregated parts of an object or objects but less than 1500 objects or 1500 objects containing in them or having upon them any amount of any substance containing lysergic acid diethylamide (LSD), or an analog thereof;

(D) not less than 10 years and not more than 50 years with respect to: (i) 900 grams or more of any substance containing lysergic acid diethylamide (LSD), or an analog thereof, or (ii) 1500 or more objects or 1500 or more segregated parts of an object or objects containing in them or having upon them any amount of any substance containing lysergic acid diethylamide (LSD), or an analog thereof;

(7.5) (A) not less than 4 years and not more than 15 years with respect to: (i) 100 grams or more but less than 400 grams of any substance listed in paragraph (1), (2), (2.1), (2.2), (3), (14.1), (19), (20), (20.1), (21), (25), or (26) of subsection (d) of Section 204, or an analog or derivative thereof, or (ii) 15 or more pills, tablets, caplets, capsules, or objects containing in them or having upon them any amount of any substance listed in paragraph (1), (2), (2.1), (2.2), (3), (14.1), (19), (20), (20.1), (21), (25), or (26) of Section 204, or an analog or derivative thereof;

(B) not less than 6 years and not more than 30 years with respect to: (i) 400 grams or more but less than 900 grams of any substance listed in paragraph (1), (2), (2.1), (2.2), (3), (14.1), (19), (20), (20.1), (21), (25), or (26) of subsection (d) of Section 204, or an analog or derivative thereof, or (ii) 200 or more pills, tablets, caplets, capsules, or objects containing in them or having upon them any amount of any substance listed in paragraph (1), (2), (2.1), (2.2), (3), (14.1), (19), (20), (20.1), (21), (25), or (26) of Section 204, or an analog or derivative thereof;

(C) not less than 8 years and not more than 40

7

8

(1), (2), (2.1), (2.2), (3), (14.1), (19), (20),
(20.1), (21), (25), or (26) of subsection (d) of
Section 204, or an analog or derivative thereof, and
(ii) not less than 10 years and not more than 50
years with respect to: (i) 900 grams or more of any
substance listed in paragraph (1), (2), (2.1), (2.2),
(3), (14.1), (19), (20), (21), (25), or (26) of
subsection (d) of Section 204, or an analog or
derivative thereof, or (ii) 1,500 or more pills,
tablets, caplets, capsules, or objects containing in
them or having upon them any amount of a substance
listed in paragraph (1), (2.1), (2.2), (3),
(14.1), (19), (20), (21), (25), or (26) of
subsection (d) of Section 204, or an analog or
derivative thereof;

    (8) 30 grams or more of any substance containing
pentazocine or any of the salts, isomers and salts of
isomers of pentazocine, or an analog thereof;

    (9) 30 grams or more of any substance containing
methaqualone or any of the salts, isomers and salts of
isomers of methaqualone;

    (10) 30 grams or more of any substance containing
phencyclidine or any of the salts, isomers and salts of
isomers of phencyclidine (PCP);

    (10.5) 30 grams or more of any substance containing
ketamine or any of the salts, isomers and salts of isomers
of ketamine;

    (11) 200 grams or more of any substance containing
any substance classified as a narcotic drug in Schedules I
or II, or an analog thereof, which is not otherwise
included in this subsection.

    (b) Any person sentenced with respect to violations of
paragraph (1), (2), (3), (7) or (7.5) of subsection (a)
involving 100 grams or more of the controlled substance named
therein, may in addition to the penalties provided therein, be
fined an amount not to exceed $200,000 or the full street value
of the controlled or counterfeit substances, whichever is
greater. The term "street value" shall have the meaning
ascribed in Section 110-5 of the Code of Criminal Procedure of
1963. Any person sentenced with respect to any other provision
of subsection (a), may in addition to the penalties provided
therein, be fined an amount not to exceed $200,000.

    (c) ~~Any person who violates this Section with regard to an~~
~~amount of a controlled~~ ~~substance other than methamphetamine or~~
~~counterfeit substance not set forth in subsection (a) or (d) is~~
~~guilty of a Class 2 felony. The fine for violation of this~~
~~subsection (c) shall not be more than $200,000.~~

    (d) Any person who violates this Section with regard to any
amount of anabolic steroid is guilty of a Class C misdemeanor
for the first offense and a Class B misdemeanor for a
subsequent offense committed within 2 years of a prior
conviction.
(Source: P.A. 99-371, eff. 1-1-16; 100-368, eff. 1-1-18.)

Case 1:20-cv-00736-DAD-SKO    Document 1    Filed 05/27/20    Page 32 of 34



Home / Browse Decisions / F.3d / 925 F.3d / 925 F.3d 1036 (2019)

# U.S. v. GRAVES

No. 16-50276.

Email | Print | Comments (0)

**View Case**   Cited Cases

925 F.3d 1036 (2019)

*UNITED STATES of America, Plaintiff-Appellee, v. Randy Alton GRAVES, aka Sweets, Defendant-Appellant.*

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 2019 Pasadena, California.

Filed May 30, 2019.

*Attorney(s) appearing for the Case*

*Devin Burstein (argued) and Jeremy Warren, Warren & Burstein, San Diego, California, for Defendants-Appellants.*

*Daniel Earl Zipp (argued), Assistant United States Attorney; Helen H. Hong, Chief, Appellate Section, Criminal Division; Adam L. Braverman, United States Attorney; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.*

*Before: Richard A. Paez and Richard R. Clifton, Circuit Judges, and Gary S. Katzmann, Judge.*

## OPINION

**CLIFTON,** *Circuit Judge:*

Randy Alton Graves challenges the life sentence imposed by the district court after it concluded he had two prior felony drug offenses under 21 U.S.C. § 841(b)(1)(A), mandating a sentence of life imprisonment. The district court concluded that his two prior convictions, including for a violation of California Penal Code § 4573.6, qualified as predicate felony drug offenses. We conclude that Graves' section 4573.6 conviction does not qualify as a predicate offense and therefore vacate his sentence and remand for re-sentencing. [1]

### I. Background

Graves was charged with (1) conspiracy to distribute methamphetamine, (2) conspiracy to distribute marijuana, and (3) possession with intent to distribute methamphetamine. Before trial, the government filed notice of its intent to seek an enhanced penalty under 21 U.S.C. § 851. Specifically, because Graves had two prior convictions for felony drug offenses, he would face a mandatory term of life imprisonment without release if he was convicted of the instant alleged offenses. 21 U.S.C. § 841(b)(1)(A). One prior conviction was for inmate drug possession, violating California Penal Code § 4573.6. The district court concluded that the prior convictions qualified as felony drug offenses and the necessary predicate offenses to trigger the enhancement.

Graves was subsequently found guilty on all three counts. At Graves' sentencing hearing, after concluding Graves was subject to a mandatory life sentence based on the § 851 enhancement, the court also set out the 18 U.S.C. § 3553 sentencing factors to "perfect the record and to make clear that if the court were to exercise discretion, if it had any to impose a sentence at less than life, it would not."

### II. Jurisdiction and Standard of Review

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We review de novo the divisibility of a statute.

[925 F.3d 1039]

*United States v. Martinez-Lopez,* 864 F.3d 1034, 1039 (9th Cir. 2017) (en banc).

### III. Discussion

Graves argues the district court erroneously concluded his California Penal Code § 4573.6 conviction qualified as a felony drug offense because the statute is both overbroad and not divisible. [2] To determine whether a state conviction is a predicate drug trafficking offense, we first determine whether the state offense is a categorical match with a qualifying federal drug trafficking offense. *Martinez-Lopez,* 864 F.3d 1034 at 1038. We do this by looking to statutory definitions to determine if the state law proscribes the same amount or less conduct than the federal drug trafficking offense. *Id.*

If the state law is not a categorical match, we then must determine whether the state offense is divisible, setting out one or more elements of the offense in the alternative. *Id.* If a statute that sweeps more broadly than the federal offense "sets out a single (or 'indivisible') set of elements to define a single crime," no conviction under that law can count as the qualifying predicate offense. *Mathis v. United States,* ___ U.S. ___, 136 S.Ct. 2243, 2248-49, 195 L.Ed.2d 604 (2016). If the state statute is divisible, the sentencing court may apply the modified categorical approach, looking to a limited class of documents "to determine what crime, with what elements, a defendant was convicted of." *Id.* at 2249. [3]

There is no dispute that section 4573.6 criminalizes controlled substances under California law that are not regulated under federal law, so the statute is overbroad. *See Medina-Lara v. Holder,* 771 F.3d 1106, 1112 (9th Cir. 2014). We therefore must determine if the statute is also divisible. "[I]f a statute is both overbroad and indivisible, a prior conviction under that statute will never qualify as a predicate drug trafficking offense ...." *Martinez-Lopez,* 864 F.3d 1039.

A divisible statute sets out one or more elements of the offense in the alternative, "and so effectively creates 'several different ... crimes.'" *Descamps v. United States,* 570 U.S. 254, 257, 263-64, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013) (quoting *Nijhawan v. Holder,* 557 U.S. 29, 41, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009)). A statute is divisible if it "lists multiple elements disjunctively" but is indivisible if it instead merely "enumerates various factual means of committing a single element." *Mathis,* 136 S. Ct. at 2249. When deciding whether a statute is divisible, "we look to such authoritative sources of state law as

[925 F.3d 1040]

state court decisions and the wording of the relevant state statute." *United States v. Figueroa-Beltran,* 892 F.3d 997, 1004 (9th Cir. 2018) (citing *Mathis,* 136 S. Ct. at 2256).

Graves was convicted in 2007, when California Penal Code § 4573.6 provided that knowing possession of "any controlled substances, the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code," or any device "intended to be used for unlawfully injecting or consuming controlled substances, without being authorized to so possess the same" was a "felony punishable by imprisonment in the state prison for two, three, or four years." Cal. Penal Code § 4573.6 (2007). The government argues that the statute is divisible because it criminalizes possession in prison of "any controlled substances," so the question of which individual controlled substance is involved is necessarily an

element of the offense. We conclude that the statute is not divisible based on the plain text, state court decisions, and the contrast to convictions under the California Health and Safety Code.

First, the plain language of the statute suggests that the type of controlled substance is merely a means of satisfying the controlled substance element. Although not dispositive, there are no disjunctive lists in the statute. *See Almanza-Arenas v. Lynch*, 815 F.3d 469, 485 (9th Cir. 2016) (Watford, J., concurring) (noting that indivisible statutes "contain a single statutory phrase that is not broken down into statutorily specified alternatives"). The only potentially divisible element of the statute is the type of controlled substance, and the statute refers to "any controlled *substances.*" Cal. Pen. Code § 4573.6(a) (emphasis added). In contrast, statutes in the California Health and Safety Code prohibit possession of "any controlled *substance.*" *See* Cal. Health & Safety Code §§ 11350, 11351, 11352, 11377 (emphasis added). This suggests that contemporaneous possession of multiple controlled *substances* is only a single crime under section 4573.6, and the type of controlled substance is merely a means and not a list of alternative elements. *See Mathis*, 136 S. Ct. at 2249.

Second, a California state court has explicitly held that contemporaneous possession of two or more discrete controlled substances at the same location constitutes one offense under section 4573.6. *See People v. Rouser*, 59 Cal.App.4th 1065, 69 Cal.Rptr.2d 563, 564 (1997). In *Rouser*, a state prison inmate was charged and convicted of two separate counts of section 4573.6 for possessing methamphetamine and heroin in the same location on the same day. *Id.* The California Court of Appeal concluded that the phrase "any controlled substances" described "a single offense irrespective of how many controlled substances are possessed, as here, at the same time and in the same place." *Id.* at 568. California state courts have relied on *Rouser* in subsequent years to reverse multiple convictions under sections 4573.6 and 4573.8 for inmate possession of different controlled substances. *See, e.g., People v. Escota*, No. E051638, 2011 WL 3811473, at *5 (Cal. Ct. App. Aug. 30, 2011) ("We agree, as do both parties that defendant should not have been charged and convicted of two counts of inmate drug possession (§ 4573.6)."); *People v. Woods*, No. F039187, 2003 WL 887056, at *7 (Cal. Ct. App. Mar. 7, 2003) ("Woods argues, the Attorney General agrees, and we concur that in-custody possession of two illicit substances at the same location at the same time constitutes but one offense under section 4573.8.").

Third, as discussed in *Rouser*, section 4573.6 is part of a completely different code and is aimed at different problems

[925 F.3d 1041]

compared to sections of the Health and Safety Code. While "section 4573.6 appears to be aimed at problems of prison administration," sections of the Health and Safety Code are "designed to protect the health and safety of all persons within [the state's] borders ... by regulating the traffic in narcotic drugs." *Rouser*, 69 Cal. Rptr. 2d at 566-67 (internal quotation marks omitted). Thus, our precedents holding certain California statutes within the Health and Safety Code divisible as to the controlled substance do not necessarily apply to section 4573.6. *See Martinez-Lopez*, 864 F.3d at 1036 (announcing "[w]e took this case en banc to revisit the divisibility of California drug statutes" and citing a section of the Health and Safety Code); *United States v. Ocampo-Estrada*, 873 F.3d 661, 668 (9th Cir. 2017) (noting that the principle from *Martinez-Lopez* "logically extends past section 11352 to other California drug laws").

We conclude, therefore, that California Penal Code § 4573.6 is not a divisible statute and therefore cannot be a categorical "felony drug offense" triggering a "mandatory term of life imprisonment" under 21 U.S.C. § 841(b)(1)(A) (2016).

Even with such a conclusion, the government argues that it is not necessary to vacate the current sentence and remand for re-sentencing, because the district court indicated at the previous sentencing hearing that it would have imposed a life sentence under the 18 U.S.C. § 3553 sentencing factors even if Graves was not subject to a statutorily mandated life sentence. Graves has noted, however, that because the district court had already concluded that Graves was subject to a mandatory life sentence, he did not submit to a presentence interview or file a sentencing memorandum in an effort to obtain a lesser sentence because that effort would have been futile. As a result, we conclude that the district court should be permitted to consider his submissions and impose a new sentence thereafter. We express no views regarding the appropriate sentence in these circumstances. When the district court re-sentences Graves, it may also consider what effect, if any, the recently enacted First Step Act has on his sentence. *See* Pub. L. No. 115-391, § 401(a), 132 Stat. 5194 (Dec. 21, 2018).

## IV.  Conclusion

We vacate Graves' sentence and remand for re-sentencing.

SENTENCE VACATED AND REMANDED.

## FootNotes

* The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

1. We deal with the remainder of Graves' arguments in a separate memorandum disposition filed concurrently with this opinion. In that memorandum we affirm his conviction and also reject his challenge to a sentencing enhancement based on the alleged unconstitutionality of 21 U.S.C. § 841.

2. The government argues this court can deem the section 4573.6 challenge waived because it was not raised in Graves' opening brief. We generally review only issues argued specifically and distinctly in the opening brief. *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001). However, we may consider issues that have been fully explored if the appellee is not prejudiced. *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990). Graves was given leave to file a supplemental brief on the subject, and the government filed a supplemental answering brief. We therefore consider this issue.

3. The government argues it is far from clear that the categorical approach should apply in the section 851 context. However, the government acknowledges that we have applied the categorical approach when evaluating the propriety of a section 851 sentencing enhancement in *United States v. Ocampo-Estrada*, 873 F.3d 661 (9th Cir. 2017). We are not convinced by the government's argument that there is no reason to resort to the categorical approach in this context. *See United States v. Sullivan*, 797 F.3d 623, 635 (9th Cir. 2015) ("To determine whether a prior state conviction falls into the specified class of federal offenses, we generally apply the categorical approach ....").

## Comment